REMAND/JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6006-GW-JCx | Date | September 3, 2020 |
|---|---|---|---|
| Title | *Regina Haro v. Kaiser Foundation Hospitals, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Terri A. Hourigan | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Vincent C. Granberry | Christian J. Rowley | |

**PROCEEDINGS:** TELEPHONIC HEARING ON PLAINTIFF'S MOTION TO REMAND THE ACTION TO STATE COURT AND REQUEST FOR ATTORNEYS' FEES IN THE AMOUNT OF $10,450 [14]

Court hears oral argument. The Tentative circulated and attached, is adopted as the Court's Final Ruling. The Court GRANTS/DENIES IN PART the motion. The Court remands the case back to state court, but denies Haro's request for an award of attorney fees.

: 30

Initials of Preparer   JG

<u>*Regina Haro v. Kaiser Foundation Hospitals*</u>; Case No. 2:20-cv-06006-GW-(JCx)
Tentative Ruling on Motion to Remand

## I.    Background[1]

In response to the ongoing COVID-19 pandemic, Kaiser Foundation Hospitals began requiring some its hourly employees to arrive at least 15 minutes prior to the start of their shift so that they could undergo medical screenings before being allowed into their worksites. The employees were not compensated for this time. Regina Haro, a Kaiser employee, filed this putative class action on behalf of other hourly Kaiser employees in California state court, alleging that this policy violated the state minimum wage laws. Kaiser removed the case to federal court, arguing that there were two separate grounds for federal question jurisdiction: complete preemption under either the Public Readiness and Emergency Preparedness Act ("PREP") or the Labor Management Relations Act ("LMRA"). Before the Court is Haro's motion to remand.

## II.   Legal Standard

Federal courts operate under the presumption that they do not have jurisdiction over state-law causes of action. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). The party seeking removal has the burden of showing that the federal court has jurisdiction over the matter and that removal is proper. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Federal courts strictly construe the removal statute against removal jurisdiction and must reject jurisdiction "if there is any doubt as to the right of removal in the first instance." *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).

The presence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). This rule makes a plaintiff the master of his complaint: it allows him to avoid federal jurisdiction by relying exclusively on state law. It is "settled law that a case may not be removed to federal court on the basis of a federal defense, including a defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede

---

[1] The following abbreviations are used for the filings: (1) Declaration Under the PREP Act for Medical Countermeasures Against COVID-19 ("COVID-19 Decl."), ECF No. 6, Exh. B; (2) Defendant's Opposition to Plaintiff's Motion to Remand ("Opp."), ECF No. 18; (3) SEIU-UHW CBA ("UHW-CBA"), ECF No. 18-1, Exh. G.

1

that the federal defense is the only question truly at issue." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 14 (1983).

There are, however, cases where the well-pleaded compliant rule gives way to "complete preemption" by federal statute. The Supreme Court has concluded that the preemptive force of some federal statutes is so strong that they "completely preempt" an area of state law. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987). In those cases, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law. *See Franchise Tax Bd.*, 463 U.S. at 24.

### III.  Discussion

#### A.  Whether PREP completely preempts this action

PREP is invoked when the Secretary of the Department of Health and Human Services issues a declaration determining that a disease or other health condition constitutes an ongoing public health emergency. 42 U.S.C. § 247d-6d(b). If the Secretary determines that there is such an emergency, he "may make a declaration, through publication in the Federal Register, recommending . . . the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures, and stating that [42 U.S.C. § 247d-6d(a)] is in effect with respect to the activities so recommended." *Id.* The Secretary has issued such a declaration for the ongoing COVID-19 pandemic. *See* COVID-19 Decl.

Once invoked, PREP provides that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). This immunity is broad. It applies to "any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure." *Id.* at § 247d-6d(a)(2)(B).

"Covered countermeasures" under the PREP Act cover drugs, biological products, or devices that are designed to diagnose, mitigate, prevent, or treat harm from the public health emergency. *Id.* at § 247d-6d(i)(1). The COVID-19 declaration more specifically defines covered countermeasures as "any antiviral, any other drug, any biologic, any diagnostic, any

other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19 . . . or any device used in the administration of any such product, and all components and constituent materials of any such product." PREP Decl., 85 Fed. Reg. at 15,202. "Administration" and "use" are not defined in the act, but the Secretary's COVID-19 declaration states that "administration" of covered countermeasures "means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for purpose of distributing and dispensing countermeasures." *Id.*

PREP preempts state laws that create different standards regarding covered countermeasures:

> During the effective period of a declaration under subsection (b), or at any time with respect to conduct undertaken in accordance with such declaration, no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that—
> (A) is different from, or is in conflict with, any requirement applicable under this section; and
> (B) relates to the design, development, clinical testing or investigation, formulation, manufacture, distribution, sale, donation, purchase, marketing, promotion, packaging, labeling, licensing, use, any other aspect of safety or efficacy, or the prescribing, dispensing, or administration by qualified persons of the covered countermeasure, or to any matter included in a requirement applicable to the covered countermeasure under this section or any other provision of this chapter, or under the Federal Food, Drug, and Cosmetic Act.

42 U.S.C. § 247d-6d(b)(8). In sum, PREP creates immunity for all claims of loss causally connected to the administration or use of covered countermeasures, which are certain drugs, biological products, or devices.

The Court has not found any binding authority holding that PREP completely preempts claims such as Haro's, but that does not matter here as the Court finds that Haro's minimum wage claim is not causally connected to any of Kaiser's covered countermeasures. Haro's minimum wage claim is simple: Kaiser requires its employees to show up 15 minutes in advance of their shift start-times to go through COVID-19 screening procedures, but is not compensating the employees for this additional time. Kaiser argues that its medical screeners use various personal protective equipment, such as masks and face shields, and therefore its screening

3

process is a use of a covered countermeasure. However, Haro's minimum wage claim is not causally connected to the screening procedures themselves, but rather the requirement that employees *show up 15 minutes before their shifts start*. Kaiser could just as easily have implemented the screenings without the requirement that employees show up early. In that case, the screening procedures would simply have occurred while employees were on the clock and Haro would not have a minimum-wage claim. For these reasons, the Court finds that complete preemption by PREP cannot provide federal question jurisdiction here.

B. <u>Whether LMRA completely preempts this action</u>

Section 301(a) of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Section 301 completely preempts state law claims centered on the enforcement of collective bargaining agreements ("CBAs"). *See Franchise Tax Bd.*, 436 U.S. at 23 ("The pre-emptive force of § 301 is so powerful as to displace any entirely state cause of action 'for violations of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.").

Section 301 completely preempts state law claims even in some instances where the plaintiffs have not alleged a breach of contract, if the plaintiffs' claim is either grounded in the provisions of the labor contract or requires interpretation of it. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985) ("If the policies that animate [Section] 301 are to be given their proper range, . . . the preemptive effect of [Section] 301 must extend beyond suits alleging contract violations."). This is so that parties are not able "to evade the requirements of Section 301 by relabeling their contract claims as claims for tortious breach of contract" or some other state cause of action, and thus "elevate form over substance." *Id.* at 211.

To determine whether Section 301 completely preempts non-breach-of-contract state law claims, courts follow a two-step process. *See Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1060 (9th Cir. 2007). First, a court determines whether the asserted cause of action involves a right conferred upon an employee by state law or by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted. *Id.* If, however, the right exists independently of the

CBA, a court must consider whether it is nevertheless "substantially dependent on analysis of a collective-bargaining agreement." *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (quoting *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 859 n. 3 (1987)); *see also Lueck*, 471 U.S. at 213 (explaining that when "state . . . law purports to define the meaning of the contract relationship, that law is preempted").  If an analysis of the right is substantially dependent on an analysis of the CBA, then the claim is preempted by Section 301; if not, then the claim can proceed under state law.

It is clear that Haro's minimum wage claim arises under state law, and so whether or not Section 301 completely preempts it depends on whether analyzing her claim substantially depends on analyzing the CBA between Kaiser and Haro's representative, Service Employees International Union-United Healthcare Workers West ("UHW").  Tracing the line of "demarcation between preempted claims and those that survive [Section] 301's reach" is not a task that always "lends itself to analytical precision." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001).  To determine whether a state law right is "substantially dependent" on the terms of a CBA, a court must decide whether the claim can be resolved by "looking to" versus "interpreting" the CBA.  *Id.* at 691.  If the latter, the claim is preempted; if the former, it is not.

Haro's minimum wage claim is based on the California Labor Code and Industrial Welfare Commission ("IWC") wage order No. 5-2001 ("Wage Order 5), which requires that "[e]very employer shall pay to each employee wages . . . for all hours worked."  Cal. Code Regs., tit. 8, § 11050.4(A).  "Hours worked" is defined as "time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."  *Id.*, § 11050.2(K).

Haro's claim therefore turns on whether or not she and the putative class members were "subject to the control" of Kaiser during those 15-minute periods that they were required to show for ahead of their work shifts.  The question of employer control is an issue of state law that does not depend on a CBA.  *See, e.g.*, *Frlekin v. Apple Inc.*, 8 Cal.5th 1038, 1042 (2020) (holding that as a matter of California law, "time spent on the employer's premises waiting for, and undergoing, required exit searches of packages, bags, or personal technology devices voluntarily brought to work purely for personal convenience by employees" was "compensable as 'hours worked' within the meaning of [the applicable IWC wage order]").

5

Kaiser argues that resolving the minimum wage claim will require the Court to look to the CBA between it and UHW to determine whether it "allow[s] Kaiser to implement such a 15-minute policy or practice as to Plaintiff and other UHW members." Opp. at 19. It relies on the scheduling provision in the CBA which provides that:

> Schedules of starting and quitting times and days off of Employees will be posted by the Employer four (4) weeks in advance in the Southern California Region and fourteen (14) days in advance in the Northern California Region subject to emergency situation changes. Such schedules will be maintained on a weekly basis and will be posted in a location readily accessible to all department Employees.

UHW-CBA ¶ 309. According to Kaiser, it is "contractually prohibited from requiring any bargaining unit employee to perform work before or after their scheduled shift without first satisfying the requirements set out in the CBA." Opp. at 4-5.

The Court is not persuaded by Kaiser's argument. Under California law, the right to be paid a minimum wage for all time worked cannot be waived. *See* Cal. Lab. Code § 1194(a) ("*Notwithstanding any agreement* to work for a lesser wage, any employee receiving less than the legal minimum wage . . . is entitled to recover in a civil action the unpaid balance . . . ."). Therefore there is no need for the Court to examine the CBA to determine if Kaiser's policy of not compensating employees for the 15-minutes is permitted under its terms – such a waiver is prohibited by California statute.[2] With her minimum wage claim, Haro is not complaining about Kaiser's scheduling of her shifts, but about the fact that she is not being paid at all for those 15 minutes spent going through the screening process. The only issue to be decided is whether the putative class members are subject to Kaiser's control during these 15 minutes. If the answer is yes, then they are entitled to compensation for that time.

For these reasons, the Court finds that Section 301 does not provide complete preemption here. Given the same conclusion with Kaiser's argument under PREP, the Court finds that there is no federal question jurisdiction and that the case must be remanded back to state court.

C. Haro's request for attorney fees

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v.*

---

[2] Even if the right to a minimum wage for all time worked could be waived, that would not change the outcome as "a court may look to the CBA to determine whether it contains a clear and unmistakable waiver of state law rights without triggering [Section] 301 preemption." *Cramer*, 255 F.3d at 692.

6

*Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  Between the scarce PREP case law and the presence of a CBA in this suit, the Court does not believe that Kaiser lacked an objectively reasonable basis for seeking removal.

### IV. Conclusion

Based on the foregoing discussion, the Court **GRANTS/DENIES IN PART** the motion. The Court remands the case back to state court, but denies Haro's request for an award of attorney fees.